EL PUEBLO DE PUERTO RICO, apelado, *v.* SAMUEL COLLADO JUSTINIANO, acusado y apelante.

*Número:* CR-93-8          *Resuelto:* 29 de febrero de 1996

*Alfredo Cardona Álvarez,* abogado del apelante; *Pedro A. Delgado Hernández, Procurador General, Carlos Lugo Fiol,*

*Subprocurador General,* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

— o —

Opinión disidente emitida por el Juez Asociado Señor Ne-
grón García, a la cual se une el Juez Asociado Señor
Fuster Berlingeri.

I

Los hechos ante nos han sido evaluados y dirimidos por
dos (2) Jurados distintos; ambos han rendido el veredicto
de culpabilidad. Una cuestión jurídico-técnica —omisión de

impartir una instrucción sobre el Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271— llevó al Tribunal de Circuito de Apelaciones (Sección Sur) a revocar la primera sentencia y ordenar un nuevo juicio.

La sentencia mayoritaria hoy sustituye la función tradicional del Jurado, que es aquilatar y dirimir la credibilidad de los testigos. *Cf. Pueblo v. Acabá Raíces*, 118 D.P.R. 369, 375–376 (1987); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 648 (1986).

El análisis sereno de la prueba desfilada, *creída por el Jurado*, revela más allá de duda razonable la culpabilidad del apelante Samuel Collado Justiniano. Expongámosla.

> El Sr. Alexis Rosado Díaz declaró que al hacer inventario del material en el almacén encontró que faltaban dos (2) cajas de la orden de Archilla Paper Corp. (una de Papel N.C.R. y otra de "Bumper Stickers"). Ese material se había recibido el día 31 de mayo de 1990 y ya para el día siguiente, 1ro de junio, faltaba. E.N.P., pág. 1.
>
> Resulta significativo que el imputado al ser cuestionado sobre el particular por Rosado Díaz, replicó que el material que faltaba lo había entregado hacía un mes y medio a la Imprenta *El Aguila*. E.N.P., pág. 1.
>
> Atestiguó Alexis Rosado Díaz, a la sazón presidente de la Imprenta Insertco, que en febrero de 1990 había comunicado por carta al imputado que no estaba autorizado a hacer compras porque le habían faltado materiales. E.N.P., pág. 1.
>
> El fiscal le presentó e identificó una factura de Archilla Paper Corp. (Identificación 1 del Pueblo). Alexis Rosado Díaz declaró que el imputado había hecho la compra, que lo había confrontado con dicha factura. E.N.P., pág. 1.
>
> Tanto Alexis Rosado Díaz, como Juan Irizarry atestiguaron la reacción del imputado al ser confrontado. El primero declaró que éste se puso pálido. En tanto el segundo atestó que el día 1 de junio de 1990, cuando sorprendió a Samuel Collado montando en un carro de la compañía unas cajas de N.C.R. y "bumper stickers", éste se puso nervioso como "frisado". El testigo Juan Irizarry definió este término como quedarse asombrado. E.N.P., pág. 3.

Por otra parte, se presentó una grabación del testimonio de Benjamín Ramos que arroja lo siguiente:

"Declaró que vio varia (sic) veces a Samuel en la guagua de Insertco, que la guagua era blanca que lo vio que llegaba tarde en la noche en una guagua Van bajaba cajas y las depositaba en una casita de Zapata, que habló con el acusado, que en marzo fue la primera vez que llegaba solo, que Zapata no estaba, que habló con el acusado sobre la razón para entrar la mercancía y el acusado le dijo que era de Insertco y que Alexis Rosado no lo podía saber, que habló con el acusado porque indirectamente la perjudicaba, que no tiene animosidad contra el acusado pero las relaciones cambiaron desde que se enteró del caso, que llegó donde Jacobo Ortiz y luego consiguió a Francisco Ortiz, que Zapata trató de sacarlo de la casa y lo amenazó con un revólver (sic), pero tenía contrato de arrendamiento por un año, que a las 6:00 a.m. llegaba Zapata y recogía la mercancía, que veía bajar bloques de papel y potes de tinta, que el papel era de 3 pies a 2–1/2 pies en cajas selladas, que para él era papel de imprenta o de computadora, que él todavía está (sic) casado con una hermana de la esposa del acusado, que Francisco Zapata recogía la mercancía en un Jeep Suzuki rotulado con Cabo Rojo Printing.

En el contra-interrogatio (sic) declaró que las veces que vio al acusado llevar mercancía fue de las 12:00 de la noche en ade-lante, que no había hora exacta, que donde ponía la mercancía era en una casita pequeña en la parte de atrás de la casa donde él vivía, que fue como 6 veces después de las 12 de la noche, que el (sic) se despertaba, que el acusado estacionaba el carro en la marquesina, que el ruido del motor lo hacía despertar, que el acusado llevaba los paquetes al hombro, que llegaba solo, que los bajaba del baúl del carro, que la tercera vez le dijo (sic) algo al acusado y éste dijo (sic) que no dijera nada que la mercancía era de Insertco, que habló con el acusado porque el (sic) estaba perjudicando por algo que no había hecho, que no dijo que era robada la mercancía porque no sabía que era robada, que todo sucedió durante marzo del 1990, que el 27 de junio de 1990 sabía que el acusado tenía que ir al Fiscal, que no recordaba donde estaba el 26 de junio, que acompañó al acusado a la ofi-cina del Lcdo. Keller, que no dijo que era una trampa que le estaban haciendo a Samuel Collado, que desde que Zapata se enteró en marzo que el (sic) sabía todo, empezó a tener proble-mas, que lo tenían amenazado de matarlo, que no le tenía miedo a Samuel." E.N.P., págs. 3 y 4.

Por último, Francisco Ortiz, agente del C.I.C. que investigó la querella del Sr. Alexis Rosado Díaz, declaró que entrevistó al imputado y le hizo las advertencias de ley. *Que éste le dijo que iba a tratar de conseguir la propiedad y le solicitó tiempo para*

*ello. El imputado se marchó y regresó más tarde y le entregó una grapadora. Adújole que el material restante no apareció en el sitio en que lo tenía.*

Cuando le entregó la grapadora le dio un recibo al imputado que éste le firmó. [E]ste se identificó con el número IX. (E.N.P., págs. 4 y 5). (Énfasis suplido.) Informe del Procurador General, págs. 4–6.

## II

A poco examinemos, la sentencia mayoritaria adolece del serio defecto de que descarta en su totalidad la prueba del Ministerio Fiscal y da entero crédito a los testigos de la defensa. Es decir, se sustituyen los hechos verdaderamente creídos por el Jurado, mediante una apreciación y destaque de unos detalles aislados, sin un enfoque integral.

La fidelidad al principio de no intervención con las apreciaciones de los Jurados, nos llevan a disentir.