Martínez Torres, Juez Ponente
*635 TEXTO COMPLETO DE LA SENTENCIA
La acusada-apelante Lutgarda Santiago Rodríguez, nos solicita que revoquemos una sentencia donde se le declaró culpable de la comisión del delito tipificado en el Artículo 165 del Código Penal de Puerto Rico, 33 L. P.R.A. see. 4271. La pena impuesta consiste de una sentencia suspendida por el período de seis (6) meses y el pago de una multa de $3,000.00, más $100.00 por concepto de la “Ley Especial”, Artículo 49-C del Código Penal, id, see. 3214. Por los fundamentos que expondremos a continuación, modificamos la sentencia apelada.
I
El 14 de junio de 2001, se presentó una denuncia contra Lutgarda Santiago Rodríguez por la alegada comisión del delito tipificado en el Artículo 166 del Código Penal de Puerto Rico, supra, sec. 4272. En síntesis, se imputó que Santiago Rodríguez se apropió ilegalmente de $930.00 en efectivo que se encontraban en diferentes sobres ‘Priority Mail” del Correo de los Estados Unidos. Según la denuncia, los sobres se encontraban bajo la custodia y responsabilidad de Santiago Rodríguez y estaban dirigidos a nombre de diferentes personas, a quienes se les privó del uso y disfrute de su propiedad. En esa misma fecha, se encontró causa probable para arresto y se impuso una fianza de 1,000.00.
Luego de celebrada la vista preliminar correspondiente, el tribunal encontró causa probable y señaló la celebración del juicio para el 9 de octubre de 2001. Transcurridas una serie de incidencias procesales, se llevó a cabo el juicio el 16 de mayo de 2002.
Durante el juicio, la defensa presentó una moción al amparo de la Regla 64(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(b), bajo el fundamento de que el gobierno de Puerto Rico no tiene jurisdicción para intervenir en el caso, ya que la aquí acusada-apelante, Santiago Rodríguez, es empleada del correo federal y no existe ley del territorio que tipifique la conducta imputada. Luego de escuchar los planteamientos de las partes, el tribunal resolvió que existe jurisdicción concurrente entre Puerto Rico y el gobierno federal, por lo que declaró sin lugar la solicitud de desestimación presentada por la defensa.
Así las cosas, continuó la celebración del juicio. La prueba de cargo consistió de los testigos Reynaldo Silva y la inspectora postal Cinthia Shofner. Visto y sometido el caso por las partes, el Tribunal de Primera Instancia, Sala de Carolina (Hon. Felipe Rivera Colón, Juez), declaró a la acusada-apelante, Santiago Rodríguez, no culpable en otros 42 cargos por infracción al Artículo 143 del Código Penal, supra, sec. 4184. Sin embargo, la declaró culpable en el caso CR2001-1246 por infracción al Artículo 165 del Código Penal, supra.
En esa misma fecha, el tribunal dictó sentencia y le impuso a la acusada-apelante, Santiago Rodríguez, una multa de $3,000.00; seis meses de cárcel bajo la modalidad de sentencia suspendida; más el pago de $100.00 por concepto de la “Ley Especial” (Art. 49-C del Código Penal, supra, sec. 3214).
Inconforme con la sentencia dictada, Santiago Rodríguez apeló ante nos. Alegó que erró el Tribunal de Primera Instancia al no declararse sin jurisdicción ante conducta delictiva ocurrida en el correo federal; al *636 declararla culpable a pesar de que ninguno de los testigos la vio cometer el delito.imputado; al condenarla a pagar $3,000.00, en contravención de lo dispuesto en el Artículo 165 del Código Penal, supra, y al “abusar de su discreción” al imponerle seis meses de sentencia suspendida.
Contando con el beneficio de la comparecencia del Procurador General y de la exposición narrativa de la prueba aprobada por el Tribunal de Primera Instancia, resolvemos.
II
De la exposición narrativa de la prueba aprobada por el Tribunal de Primera Instancia, se desprende que el testigo Reynaldo Silva Huertas declaró que es inspector postal para el United States Postal Office. Declaró dicho testigo que los inspectores postales habían recibido varias querellas por el hurto en la correspondencia, por lo que se realizó una investigación que duró tres (3) meses. E.N.P., pág. 2. Testificó sobre el particular que el día de los hechos, a eso de las 5:30 a.m., comenzó a vigilar mediante cámaras de seguridad el área donde se divide por “zip code” la correspondencia “Priority Mail”. E.N.P., pág. 2.
También se desprende de la exposición narrativa que el testigo, Silva Huertas, preparó el día antes, junto a la inspectora Cinthia Shofner, un dispositivo electrónico que se colocó en un sobre “Priority Mail”. Según el testigo, dicho sobre con el dispositivo se colocó como a eso de las 5:30 a.m. en una de las bandejas que trabajaba la acusada-apelante, Santiago Rodríguez. E.N.P., pág. 2.
Conforme a la exposición narrativa, en el video tomado por las cámaras de seguridad se vio cuando la acusada-apelante, Santiago Rodríguez, salió al receso a eso de las 8:00 a.m. y regresa como a las 8:30 a.m. y que dentro de ese período de tiempo, el video no muestra el área de trabajo donde Santiago Rodríguez realizaba su labor. E.N.P., pág. 2.
El testigo Silva Huertas declaró que a eso de las 8:45 a.m., el dispositivo comenzó a sonar y que observaron a la acusada-apelante, Santiago Rodríguez, abriendo el sobre. De acuerdo al testimonio, los hechos se estaban observando a través de un monitor y el sobre alterado envió una señal. E.N.P., pág. 2. Declaró también que inmediatamente acudieron al área de trabajo de Santiago Rodríguez e intervinieron con ella cuando se dirigía al baño y recogieron evidencia. E.N.P., pág. 2.
En el contrainterrogatorio, el testigo admitió que no vio a la acusada-apelante, Santiago Rodríguez, apropiarse del dinero, ni personalmente ni por el monitor del sistema de cámaras. E.N.P., pág. 3.
Por su parte, la testigo Cinthia Shofner declaró que como a las 5:30 a.m. del día anterior había preparado un sobre con dinero y un dispositivo electrónico. Testificó que el dispositivo emitió un sonido y que detuvieron a la acusada-apelante, Santiago Rodríguez, en la entrada del baño de mujeres y que al registrarla, le ocuparon $480.00 en efectivo. E.N.P., pág. 3. En el contra-interrogatorio, la testigo declaró que no vio en el monitor los delitos que se le imputaban a Santiago Rodríguez. E.N.P., pág. 3.
III
Aclarado el contenido de la exposición narrativa de la prueba, procede que atendamos el primer señalamiento de error relacionado a la alegada falta de jurisdicción del Tribunal de Primera Instancia para atender este caso, ya que el delito imputado se cometió dentro de las facilidades del correo federal localizado en el aeropuerto.
El Artículo 2 del Código Penal, supra, sec. 3002, dispone que dicho código se aplicará por delito consumado o intentado: (a) en la extensión territorial del Estado Libre Asociado de Puerto Rico; o (b) fuera del Estado Libre Asociado de Puerto Rico cuando el resultado delictivo se produce en su extensión territorial; o (c) fuera del Estado Libre Asociado de Puerto Rico por funcionario o empleado público, o persona a su servicio, *637 cuando constituya una violación de sus funciones o deberes inherentes a su cargo o encomienda.
Conforme a la disposición antes transcrita, el estado tiene jurisdicción para aplicar sus leyes penales a todas las personas que cometan delito dentro de su extensión territorial, independientemente de su nacionalidad. Dora Nevárez Muñiz, Derecho Penal Puertorriqueño-Parte General, Segunda Edición, Instituto para el Desarrollo del Derecho, Inc., 1994, pág. 83.
El Artículo 3 del Código Penal, supra, sec. 3003, dispone que la extensión territorial, para efectos de la aplicación de la ley penal, cubre el espacio de tierra, mar y aire sujeto a la jurisdicción de Puerto Rico. Sin embargo, la definición de extensión territorial estará coartada en aquellas áreas y delitos en donde el gobierno federal tiene jurisdicción. Dora Nevárez Muñiz, supra, pág. 84.
Dada la relación política entre Puerto Rico y Estados Unidos, procede que expongamos lo que dispone la Sección 7(3) del Código Penal de los Estados Unidos, 18 U.S.C.A. see. 7(3). Dicha sección establece que la jurisdicción territorial del gobierno federal es aplicable en:

...“[cjualquier terreno reservado o adquirido para uso de los Estados Unidos, y bajo su jurisdicción exclusiva o concurrente, o a cualquier lugar comprado o de otro modo adquirido por los Estados Unidos con el consentimiento de la legislatura del estado en que ubique, con elfin de construir fuertes, arsenales, almacenes, astilleros, y otras edificaciones que fueran necesarias”.

Traducción nuestra. 
En resumen, el gobierno federal tiene jurisdicción original en materia penal, para atender en cualquier asunto relacionado con delitos cometidos contra las leyes de los Estados Unidos (id. see. 3231), delitos cometidos en alta mar o en el territorio federal (ibid., sec. 7); y excepcionalmente, por traslado de una causa sometida en el foro estatal cuando se plantee una cuestión federal y exista una ley que provea para ese traslado. Dora Nevárez Muñiz, supra, pág. 85.
También existe la "Assimilative Crimes Act", 18 U.S.C.A. sec. 13. Dicha ley incorpora por referencia las leyes penales del estado o territorio en que los enclaves federales antes mencionados están localizados. Por lo tanto, en ausencia de una ley tipificando como delito los actos específicos cometidos en el enclave federal, el gobierno de los Estados Unidos puede ejercer su jurisdicción y procesar al imputado utilizando la ley local cuando ésta tipifica esos actos como delito. Id., pág. 87.
No obstante todo lo anterior, la mera ocupación de una edificación por parte del gobierno federal no resulta automáticamente en la jurisdicción exclusiva de éste. Ya en Puerto Rico se ha resuelto que se presume la jurisdicción del gobierno de la isla sobre aquellos delitos cometidos dentro de su demarcación territorial. Quien pretenda cuestionar esa presunción, deberá controvertirla con prueba de cesión autorizada por la Asamblea Legislativa de Puerto Rico. Pueblo v. Suárez, 51 D.P.R. 903 (1937). Véase también como persuasivo: Pueblo v. Víctor Santiago, KLCE-02-00833, Resolución de 12 de agosto de 2002; Circuito Regional de San Juan, Panel IV (Cordero, Juez Ponente).
En Pueblo v. Suárez, supra, el Tribunal Supremo estuvo frente a un argumento similar al de la acusada-apelante, Santiago Rodríguez, en el sentido de que hay jurisdicción federal exclusiva federal cuando se comete un delito dentro de una instalación federal, en este caso, el correo. En aquella ocasión, el Tribunal Supremo expresó lo que a continuación citamos in extenso:

"Los estados -y el Pueblo de Puerto Rico por virtud de su Carta Orgánica-, tienen jurisdicción exclusiva para conocer de y castigar todos aquellos delitos que fueren cometidos dentro de sus límites territoriales. Esa 
*638
es la regla general de jurisdicción. Y se funda, naturalmente, en que los estados son soberanos, con todos los poderes inherentes a la soberanía, mientras que el Gobierno Federal es un gobierno de poderes delegados, que puede ejercer solamente aquéllos que le hayan sido cedidos por los estados. La excepción a la regla general es la que establece la Constitución Federal (Art. 1, Sección 8, cláusula 17) al conceder al Congreso el poder legislativo exclusivo sobre todos aquellos locales (places) comprados con el consentimiento de la Legislatura del Estado en que radicaren para la construcción de fuertes, almacenes, arsenales, y otros edificios necesarios. Cuando el Gobierno Federal compra terrenos para cualesquiera de los indicados fines y la legislatura estadual da su consentimiento, los terrenos así comprados quedan ipso facto sometidos a la jurisdicción exclusiva del Congreso y la jurisdicción del estado cesa por completo. Véase U.S. v. Cornell C.C.R.I. 1819)2 Mason 60, 25 Fed. Cases núm. 14867.

...No basta, pues, que el Gobierno Federal ocupe un edificio con una oficina de correos, para que de esa mera ocupación surja como consecuencia inevitable la jurisdicción exclusiva de los tribunales nacionales [federales]. Es necesario que el Gobierno Federal haya comprado o expropiado el edificio. Ese hecho no puede presumirse, debe probarse por el que lo alega...

La jurisdicción excepcional no se presume nunca. El que la alega debe probarla. En el caso de autos, el fiscal alegó que el delito cometido había sido cometido en la Municipalidad de San Juan, Puerto Rico, que forma parte del Distrito Judicial de San Juan. Y la prueba demuestra que el edificio que se trató dañar o destruir radica dentro de esa jurisdicción. No existiendo presunción legal alguna a favor de la jurisdicción federal invocada por el apelante, por el mero hecho de que en el edificio estuviese instalada una oficina de correos, el fiscal no estaba obligado a probar la negativa; o sea, que el edificio no era propiedad de los Estados Unidos, por compra o expropiación. Era al acusado a quien incumbía probar su afirmación, demostrando que el caso está comprendido, por excepción, dentro de la jurisdicción federal. Del récord no aparece que el acusado presentara prueba alguna tendiente a sostener su alegación."

Id., págs. 907 y 910; énfasis suplido y citas omitidas. Véase también sobre el particular: López v. Corte, 58 D.P.R. 115 (1941); 28 L.P.R.A. secs. 46, 55 y 56.
En este caso, la acusada-apelante, Santiago Rodríguez, se limita a fundamentar la alegada falta de jurisdicción del tribunal local citando la "Assimilative Crimes Act", supra. No obstante, Santiago Rodriguez no expone de qué manera dicha legislación, cuyos alcances ya expusimos, le resta jurisdicción a Puerto Rico para penalizar la conducta ilegal que se le imputaba.
De otro lado, hemos estudiado el expediente y no encontramos que Santiago Rodríguez haya citado fuente legal o hecho alguno para derrotar la presunción de que Puerto Rico tiene jurisdicción sobre los delitos que se cometan dentro de su demarcación territorial, aunque la conducta se lleve a cabo dentro de una dependencia federal. Santiago Rodríguez tampoco nos presenta prueba o estatuto alguno que sustente su alegación de jurisdicción federal exclusiva por ella ser empleada del servicio postal. Por lo tanto, no erró el Tribunal de Primera Instancia al declarar sin lugar la moción de desestimación presentada por la defensa, al amparo de la Regla 64(b) de Procedimiento Criminal, supra. Al igual que sucedió ante este foro, la acusada-apelante, Santiago Rodríguez, no le pudo demostrar al Tribunal de Primera Instancia que la isla carece de jurisdicción para encausar, bajo sus propias leyes, la conducta criminal imputada. Por lo tanto, el primer error señalado no se cometió.
*639 IV
En segundo lugar, la acusada-apelante, Santiago Rodríguez, argumenta ante nos que erró el Tribunal de Primera Instancia al declararla culpable del delito imputado, a pesar de que ninguno de los testigos la vio cometerlo. Sobre este aspecto, alega que no se le probó su culpabilidad más allá de toda duda razonable.
El Artículo n, Sección 11, de la Constitución de Puerto Rico consagra la presunción de inocencia como uno de los derechos fundamentales que asiste a todo acusado. Por ello, la Regla 110 de Procedimiento Criminal dispone que “[e]n todo procedimiento criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá... ”.
Es por esta razón que el Ministerio Público deberá presentar prueba que establezca más allá de duda razonable todos los elementos del delito y su vínculo con el acusado. Todo ello es necesario para obtener una convicción válida que supere la presunción de inocencia del acusado. Pueblo v. Calderón Alvarez, 140 D.P.R. 627 (1996); Pueblo v. Collado, 140 D.P.R. 107 (1996); Pueblo v. González Román, 138 D.P.R. 691 (1995).
El mandato constitucional que garantiza al acusado la presunción de inocencia, exige que toda convicción esté sostenida por evidencia que “además de suficiente, [sea] satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Esa insatisfacción con la prueba es lo que se conoce como duda razonable y fundada”. Pueblo v. Feliciano Rodríguez, Opinión de 29 de febrero de 2000, 2000 J.T.S. 47.
Sin embargo, lo anterior no significa “que toda duda posible, especulativa o imaginaria tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, dirige la inteligencia y satisface la razón.” Pueblo v. Rosario Reyes, 138 D.P.R. 591, 598 (1995).
La Régla 10(H) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(H), dispone que cualquier hecho en controversia es susceptible de ser demostrado por prueba directa o mediante evidencia indirecta o circunstancial. Este último tipo de evidencia es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia. Es norma establecida que la prueba circunstancial es intrínsecamente igual a la directa. Pueblo v. Pagán, Ortiz, 130 D.P.R. 470, 479 (1992).
Asimismo, una convicción puede estar válidamente sostenida por prueba indirecta o circunstancial, siempre y cuando la culpabilidad del acusado se establezca fuera de duda razonable. Pueblo v. Picó Vidal, 99 D.P.R. 708, 713 (1971). La característica fundamental de la prueba circunstancial es que la evidencia ofrecida, aunque fuere creída, no es por sí sola suficiente para probar el hecho que se pretende probar con ella. Requiere de un proceso de inferencias en unión a otra evidencia ya admitida, o por admitirse, o un razonamiento basado en la experiencia y las inferencias que hace una persona razonable. Se trata de que las circunstancias apuntan en dirección favorable a la inferencia. En su discernimiento al considerar la evidencia circunstancial aducida para probar un hecho, el juzgador debe reconocer la distinción entre aquélla que es una mera conjetura y la que es una inferencia razonable. Admor. F.S.E. v. Almacén Ramón Rosa, Opinión de 30 de junio del 2000, 2000 J.T.S. 122.
Al estudiar la exposición narrativa de la prueba, se desprende que a raíz de varias querellas sobre el hurto en la correspondencia, se levantó una vigilancia directa sobre la acusada-apelante, Santiago Rodríguez. A esos efectos; se colocó un dispositivo en una de las bandejas donde Santiago Rodríguez trabajaba. También se desprende de la exposición narrativa que luego de que Santiago Rodríguez regresara a su área de trabajo después de un receso, el dispositivo comenzó a sonar y la observaron abriendo un sobre. Acto seguido, los inspectores del correo intervinieron con ella cuando se dirigía al baño y recogieron evidencia, es decir, dinero *640 en efectivo.
La única contención de la acusada-apelante, Santiago Rodríguez, es que ninguno de los testigos la vio abrir el sobre a través de un monitor. Sin embargo, no se debe perder de perspectiva que la vigilancia estaba centrada sobre su área de trabajo y el sobre alterado con un dispositivo se colocó en una de las bandejas que ella trabajaba. La sucesión de eventos que ocurrió después que el dispositivo comenzó a sonar apunta, aunque de una forma circunstancial, a que Santiago Rodríguez se apropió del dinero que estaba en el sobre alterado y luego se dirigió al baño, lugar donde los inspectores postales procedieron a intervenir con ella y a ocuparle el dinero. 
Aunque del testimonio de los testigos no se desprende que hubieran visto a la acusada-apelante sustraer el dinero, sí se presentó prueba circunstancial suficiente como para concluir, más allá de duda razonable, que la acusada-apelante, Santiago Rodríguez, se apropió ilegalmente de cierta cantidad de dinero que estaba depositada en uno de los sobres “Priority Mail” localizado en la bandeja que ella trabajaba. La conclusión a la que llegó el tribunal no es producto de una mera conjetura, sino que es una inferencia razonable luego de aquilatar toda la evidencia presentada.
Ya que no existe indicio de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba, no intervendremos con la determinación del tribunal sentenciador. Pueblo v. Maisonave, 129 D.P.R. 49 (1991). Sólo ante esos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible o increíble, habremos de intervenir con la apreciación efectuada. Pueblo v. Irizarry Irizarry, Opinión de 10 de mayo de 2002, 2002 J.T.S. 68. No estando presentes ninguno de esos elementos en este caso, procede resolver que el segundo error señalado tampoco se cometió.
Y
La acusada-apelante, Santiago Rodríguez, alega también que la multa aplicada por el Tribunal de Primera Instancia excedió el límite estatutario dispuesto en el Artículo 165 del Código Penal, supra, sec. 4271. 
El Artículo 165, id., dispone lo siguiente:

“§4271. Apropiación ilegal

Toda persona que ilegalmente se apropiare sin violencia ni intimidación de bienes muebles, pertenecientes a otra persona, será sancionada con pena de reclusión por un término que no excederá de seis meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas, a discreción del tribunal. ”

Enfasis suplido.
Como vemos, el antes transcrito artículo sólo contempla la imposición de multa hasta un máximo de $500.00. En este caso se le impuso a la acusada-apelante, Santiago Rodríguez, una multa de $3,000.00, la cual excede por mucho el límite establecido por ley.
Para justificar la cuantía de la multa impuesta, el Procurador General nos refiere al Artículo 12 del Código Penal, supra, sec. 3044, el cual establece los criterios para clasificar un delito como grave o menos grave. Dicho artículo se enmendó a través de la Ley Núm. 252 de 15 de agosto de 1999. De acuerdo al Procurador General, se justifica la cuantía de la multa impuesta en este caso, ya que el Artículo 12 ahora dispone que se considerará delito menos grave todo aquél que apareje pena de reclusión por un término que no exceda de seis (6) meses, pena de multa que no exceda de $5,000.00 o ambas penas a discreción del tribunal.
*641 De acuerdo a la interpretación del Procurador General, dicho artículo tuvo el efecto de enmendar todas las penas de los delitos en la parte especial del código, por lo que en todos los delitos menos graves se puede imponer una multa de hasta $5,000.00. Dicha interpretación no nos persuade, ya que ello tendría el efecto de avalar la imposición de multas muy por encima de lo contemplado por el legislador para cada conducta en específico.
El Artículo 12, supra, es una disposición que se limita a esbozar unos criterios generales que nos ayudan a determinar lo que es un delito grave o menos grave, de acuerdo a las multas o penas establecidas por el legislador para cada delito en particular. Nada en dicho artículo, o en la Ley Núm. 252, supra, tiene el efecto de enmendar cada uno de los delitos tipificados para ahora aparejar una multa de hasta $5,000.00. Definitivamente, ese no es el alcance del referido artículo. Por lo tanto, procede reducir la cuantía de la multa impuesta a la acusada-apelante, Santiago Rodríguez.
A la luz de lo anteriormente expuesto, procedemos a rebajar la multa impuesta por el Tribunal de Primera Instancia de $3,000.00 a $500.00, máximo contemplado en el Artículo 165, supra, ya que no se nos ha demostrado que proceda una multa de menor cuantía.
Por último, la acusada-apelante, Santiago Rodríguez, alega que el tribunal abusó de su discreción al imponerle una sentencia de seis meses de cárcel bajo el mecanismo de sentencia suspendida. Lo único que expone para fundamentar su alegación es que la pena debe ser proporcional al delito cometido.
El anteriormente citado Artículo 165, supra, sec. 4271, dispone claramente que una de las penas a ser impuestas por violación a dicho artículo es precisamente la de reclusión por un término que no excederá de seis (6) meses. Dicha pena se puede combinar-,, a discreción del tribunal, con pena de multa o restitución. Como vemos, el texto del Artículo 165 es claro, por lo que del mismo no se desprende cuál es el abuso de discreción alegadamente cometido por el tribunal al dictar una sentencia dentro de los parámetros permitidos por ley, máxime cuando la impuso bajo el mecanismo de sentencia suspendida. Por otro lado, la acusada-apelante, Santiago Rodríguez, no nos ha esbozado razones de peso que nos lleven a intervenir con la discreción del tribunal al ejercer su facultad adjudicadora conforme a los postulados de la ley aplicable.
VI
Por los fundamentos anteriormente expuestos, modificamos la sentencia apelada a los únicos efectos de reducir la multa impuesta de $3,000.00 a $500.00. El resto de la sentencia se sostiene en sus demás extremos, por lo que según modificada, se confirma la sentencia.
Así lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 1
1. El texto en inglés lee de la siguiente forma:

“Section 7. Special maritime and territorial jurisdiction of the United States defined

The term special maritime and territorial jurisdiction of the United States, as used in this title, includes:

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction 
*642
thereof, or any place purchased or otherwise acquired by the United States by the consent of the legislature of the State in which the same shall be, for the erection a fort, magazine, arsenal, dockyard or other needful building. ”

Dicha sección tiene un lenguaje similar al Artículo I, Sección 8, Cláusula 17 de la Constitución de los Estados Unidos de Norteamérica, la cual dispone que el Congreso tendrá facultad para:

“To exercise exclusive Legislation in all cases whatsoever, over such District (not exceeding ten Miles square), as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority overall Places purchased by the Consent of the Legislature of the Sate in which the Same shall be, for the Erection of Forts, Magazines, Arsenal, Dockyards, and other needful Builidings. ”

2. Según del propio alegato de la acusada-apelante, Santiago Rodríguez, los inspectores postales prepararon y depositaron en el correo un sobre “Priority Mail” con una postal, incluyendo $80.00 en 8 billetes de $10.00 y un dispositivo especial electrónico para alertar si la carta era abierta. Alegato en Apelación, pág. 6
3. §4271. Apropiación Ilegal
Toda persona que ilegalmente se apropiare sin violencia ni intimidación de bienes muebles, pertenecientes a otra persona, será sancionada con pena de reclusión por un término que no excederá de seis meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas a discreción del tribunal.
4. §3045. Clasificación de los delitos
Los delitos se clasifican en menos grave y graves.
Es delito menos grave todo aquél que apareja pena de reclusión por un término que no exceda de seis meses, pena de multa que no exceda de cinco mil (5,000) dólares o ambas penas a discreción del Tribunal. Delito grave comprende todos los demás delitos.
5. Para una interpretación reciente del Artículo 12, supra, véase Pueblo v. Maxon Engineering Services, Opinión de 17 de marzo de 2003, 2003 J.T.S. 39.