*2 TEXTO COMPLETO DE LA SENTENCIA
Evaristo Maldonado (“Maldonado”) presentó un escrito de Apelación en el que nos solicitó la revisión de una Sentencia dictada el 30 de junio de 2003, por el Tribunal de Primera Instancia, Sala Superior de San Juan {“TPI”). Veamos los hechos.
I
El 12 de diciembre de 1997, Maldonado radicó una petición ex parte de Declaración de Incapacidad y Nombramiento de Tutor. Alegó en la misma que es el padre de Laura Soledad Maldonado Guerrero {“Laurita”) de 23 años para ese momento, quien es incapacitada para velar por su persona y bienestar por sufrir de una malformación de la vena de galeno, lo que causa un grado significativo de retardación mental hasta el punto de ser su mente como la de una niña de diez años. Solicitó en la referida petición ser el tutor de la joven por no existir una causa que lo inhabilite para ello. Este caso, repetimos, tiene como génesis el año 1977, que culminó con una sentencia del año 1980. Para entender a cabalidad el asunto, procedemos a relatar lo ocurrido en aquel momento.
Mediante Sentencia del 21 de marzo de 1980, el TPI otorgó la custodia de Laurita y de su otro hijo, Antonio, a Maldonado, y determinó que la madre de los niños, Laura Guerrero De León (“Guerrero”), fue *3 negligente en el cuido de ellos al no brindarle educación, seguridad o servicios de salud entre otros. En dicha sentencia se determinó, además, que la patria potestad de los niños sería compartida. Posteriormente, por alegaciones presentadas bajo juramento ante el Departamento de Servicios Sociales en tomo a la seguridad de los niños Laurita y Antonio, fueron puestos de inmediato bajo la custodia provisional de dicha agencia. Luego de este incidente, el TPI, mediante Resolución, concedió nuevamente la custodia de Laurita y Antonio a su madre, Guerrero.
Como mencionamos anteriormente, el 12 de diciembre de 1997, Maldonado presentó una petición ex parte de “Declaración de Incapacidad y Nombramiento de Tutor”. El 25 de marzo de 1998, Guerrero se opuso a dicha petición aduciendo que no existía razón alguna para que procediese dicha declaración, ya que Laurita estaba bajo su custodia y cuido. Sin embargo, cabe señalar que en la referida moción, Guerrero no solicitó que se le nombrase a ella como tutora de Laurita. El TPI nombró a la Procuradora Especial de Relaciones de Familia, Leda. Anabelle Vázquez, como defensora judicial de Laurita.
De toda la prueba presentada ante el TPI, debemos mencionar lo siguiente: (1) el Dr. Boris Rojas determinó que la malformación de la vena de galeno producía en Laurita retraso e impedimento en el área neuro-motor, lo que le impide realizar las tareas mínimas del diario vivir; (2) el Dr. Cabrera, psiquiatra del Estado, indicó que Laurita no podía regir su persona o sus bienes por ser sus reacciones lentas y no adecuadas; (3) el Dr. Luis A. Feliciano rindió el informe correspondiente a la evaluación de Maldonado y Guerrero; dicho informe, al igual' que otra prueba pericial, arrojaron que ambos padres estaban capacitados para fungir como tutores; sin embargo, que por el vínculo afectivo estrecho que existía entre madre e hija era conveniente que éstas permanecieran juntas. Por otro lado, el TPI entrevistó a Laurita quien expresó su deseo de permanecer con su madre.
Maldonado hizo innumerables imputaciones a Guerrero, entre éstas estaban que Laurita era su prisionera, que utilizaba dos seguros sociales y nombres falsos y que impedía las relaciones paterno filiales. De acuerdo a la prueba presentada ante su consideración, el TPI descartó que Guerrero hubiese incurrido en fraude al seguro social o que pusiese en peligro la vida de Laurita.
A pesar de las solicitudes de ambas partes para descalificarse como posibles tutores, el 17 de noviembre de 2001, el TPI decidió escuchar toda la prueba, específicamente aquella relacionada a la alegada incapacidad, para luego llegar a una determinación. El 5 de diciembre de 2000, el TPI emitió una Resolución en la cual decidió no descalificar a ninguna de las partes para así acelerar el trámite del caso.
El 30 de junio de 2003, el TPI dictó Sentencia en la que: (1) declaró a Laurita incapaz para regir su persona y sus bienes; (2) nombró tutora de Laurita a su madre, Sra. Guerrero; (3) ordenó a su tutora satisfacer una fianza de $2,000.00 y someter declaración jurada aceptando la tutela; (4) ordenó a la tutora rendir un informe semestral detallado y bajo juramento de la cuentas de Laurita; (5) ordenó tratamiento psicoterapéutico a Laurita y a los litigantes para establecer un plan de relaciones patemo-filiales; y (6) refirió a la Sala 703 del TPI lo referente a la pensión alimentaria.
Oportunamente, Maldonado presentó ante el TPI una “Moción Solicitando Determinaciones de Hechos Adicionales”, en la que sostuvo que Guerrero se opone a las relaciones paterno-filiales, que niega la incapacidad de Laurita por su conveniencia y que no le ha dado los cuidados especiales que necesita la joven. Maldonado añadió que no se le permitió presentar prueba de refutación al testimonio de la Dra. Laura Guerrero por medio de los testimonios de su esposa, su hijo, el Dr. José Marques y del Dr. Nicolás Casillas.
Maldonado también solicitó reconsideración a la sentencia dictada por el TPI aduciendo que, como Guerrero había sido en una ocasión privada de la custodia de Laurita mediante una sentencia final y firme, debió haber presentado prueba de rehabilitación, lo que no hizo. Además, argumentó que no podía ser *4 nombrada tutora por haber sido previamente privada de la custodia de Laurita y por haber litigado innecesariamente el estado de incapacidad de ésta. El TPI emitió resolución declarando sin lugar las mociones presentadas por Maldonado. No conforme, Maldonado presentó la apelación que aquí nos concierne alegando la comisión de los siguientes errores:

“1) Erró el Tribunal de P-rimera Instancia al apreciar indebida o incorrectamente la prueba para conceder la tutela a la parte apelante-recurrida.

2) Erró el Tribunal de Primera Instancia al no permitir prueba de impugnación en el caso de autos.

3) Erró el Tribunal de Primera Instancia al recibir comunicación y no permitir el acceso a la prueba. ”

II
Como primer señalamiento, aduce Maldonado que el TPI erró al apreciar la prueba y conceder la tutela a Guerrero por las siguientes razones: (1) Guerrero fue privada de la custodia de sus hijos, por tanto, al reclamar la tutela tenía que presentar prueba de rehabilitación y de calificación como tutor de la joven; (2) ambas partes fueron evaluadas para fungir como tutores concediéndosele la misma a Guerrero a pesar de haber sido privada de la custodia previamente por maltrato, negligencia y descuido.
En nuestra jurisdicción, la apreciación de la prueba hecha por el foro primario merece gran deferencia por parte de un tribunal apelativo y que tuvo oportunidad de evaluar el comportamiento de los testigos y sus reacciones. En ausencia de error manifiesto, pasión, prejuicio o parcialidad, los tribunales apelativos no intervendrán con la apreciación de la prueba hecha por el Tribunal de Instancia. Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III; Monllor Arzola v. Sociedad de Gananciales, 138 D.P.R. 600, 610 (1995). O sea, un tribunal apelativo puede intervenir con la apreciación de la prueba cuando existe error manifiesto, prejuicio, parcialidad o pasión por parte del juzgador de los hechos. Pueblo v. Collado Justiniano, 140 D.P.R. 107, 115 (1996). En los casos donde un análisis integral de la prueba le causa a un tribunal apelativo insatisfacción o intranquilidad de conciencia tal que le estremezca el sentido básico de justicia, procede la intervención con la apreciación y la adjudicación de credibilidad en relación con la prueba testifical. Pueblo v. Cabán Torres, 117 D.P.R. 645, 648 (1986). Aunque el tribunal apelativo está obligado a darle debida consideración y deferencia a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos, se podrá dejar sin efecto las determinaciones de hechos basadas en testimonio oral cuando las mismas sean claramente erróneas. Regla 43.2, Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. HI, R. 43.2.
Las determinaciones de hechos no deben ser rechazadas de forma arbitraria, ni sustituidas por el criterio del foro apelativo, salvo que éstas carezcan de fundamento suficiente a la luz de la prueba presentada. Ciertamente, los foros de instancia están en mejor posición para evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por tal razón, su apreciación merece gran respeto y deferencia. En fin, repetimos, que a menos que exista pasión, prejuicio, parcialidad, error manifiesto y/o que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo debe abstenerse de intervenir con la apreciación de la evidencia hecha por el TPI. Como señaláramos, el fundamento de esta deferencia hacia el foro apelado es que el juez del foro recurrido tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla. Trinidad García v. Chade, 2001 J.T.S. 10,_D.P.R._(2001), a la pág. 793.
Por entender que la determinación del TPI no demuestra prejuicio, parcialidad o error manifiesto, no entraremos a evaluar los criterios que el referido foro tuvo para llegar a emitir su dictamen. En cuanto a la apreciación de la prueba documental y pericial que el TPI tuvo ante su consideración, tenemos más libertad para evaluarla y analizarla. Es por ello que examinaremos la transcripción de la prueba sometida ante nuestra consideración detalladamente y expondremos, a grandes rasgos, los puntos más importantes de la misma. *5 Constituye un principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aun adoptar su propio criterio en la apreciación de la misma y hasta descartarla aunque resulte técnicamente correcta. Cruz v. Centro Médico de P.R., 113 D.P.R. 719, 721 (1983).
No obstante, “nuestra decisión debe estar fundada en la prueba vertida en el juicio por los peritos y la prueba documental. En ausencia de prueba, no es nuestra función establecer a este nivel apelativo los elementos requeridos por el Art. 1802 del Código Civil, supra. De lo contrario, cedemos a la tentación de sustituir el criterio de los peritos médicos por el nuestro, según un estudio apelativo de la literatura disponible." Ríos Ruiz v. Mark, 119 D.P.R. 821, 822 (1987).
Examinada la transcripción de la prueba sometida ante nuestra consideración, concluimos que el TPI no ha sido irrazonable en la evaluación de la prueba documental y pericial. Su determinación es correcta y está sostenida en la prueba presentada la cual nosotros también evaluamos. Hacemos un breve resumen.
Como primer testigo compareció la Sra. Dorimar Soto Torres, Trabajadora Social, quien recomendó que Laurita se quedara viviendo con Guerrero. Indicó que de acuerdo a las conversaciones que sostuvo con la joven, ésta prefirió quedarse con su madre. Adujo que, a su entender, ambos padres estaban capacitados para brindarle a Laurita la estabilidad emocional que necesita. Respecto a las relaciones paterno-filiales señaló lo siguiente, a la página 30 de la transcripción:

“...la madre ha estado en la mejor disposición de que esas relaciones se den; inclusive, le ha informado al padre sobre los logros que ha tenido la joven y sobre sus actividades, e inclusive sus cuidados de salud... ”.

Por último, a la página 220 de la trascripción adujo:

“Como bien dice nuestro informe en nuestra evaluación, nosotros no encontramos razones por la cual deba privarse a la madre de la custodia de su hija, ya que encontramos que ésta atiende sus necesidades materiales, físicas y emocionales. En este hogar se le garantiza la continuidad y permanencia en aspectos familiares, vocacionales y cuidados médicos. Existen unos lazos de apego que para nosotros son bien significativos entre la joven y su mamá a diferencia de las relaciones con su papá, las cuales se encuentran interrumpidas hace tres años”.

La Dra. Nieves Stuart, psicóloga clínican entrevistó a Maldonado, su esposa e hijo y examinó los expedientes de los trabajadores sociales en el caso. La Dra. Stuart testificó que tuvo la oportunidad de evaluar a Maldonado, a su actual esposa, a Guerrero y a Laurita cuando ésta era una niña. Además, rindió un informe al respecto en el año 1987. La Dra. Stuart adujo que en términos de estabilidad, salud, crecimiento y todos los aspectos relacionados al bienestar de Laurita, Maldonado reunía todos los requisitos para ser un tutor ideal. También adujo que deberían iniciarse las relaciones-paterno filiales lo antes posible con Maldonado. No obstante, en su declaración, la Dra. Stuart aceptó que Laurita le dijo en una ocasión que la esposa de Maldonado le daba y halaba el pelo con el cepillo cuando la peinaba.
Maldonado, en su tumo, indicó que en el año 1996 acudió al tribunal para que Guerrero le permitiera ver a su hija porque las relaciones paterno-filiales estaban suspendidas. Expuso que debido a que Guerrero no atendió a su petición de relacionarse con Laurita, se vio obbgado a acudir a instar el pleito que nos ocupa y que, a pesar del planteamiento de Guerrero de que no había jurisdicción porque Laurita era mayor de edad, continuó con el mismo para no dejarla desprotegida. Maldonado adujo que Laurita ha estado en escuelas especiales toda su vida y que, a pesar que perdió la custodia de ella en el año 1987, ha tenido que acudir al tribunal todos los años para obligar a Guerrero a matricular a la joven en escuelas especiales, ya que ésta no reconoce la incapacidad de *6 Laurita. Maldonado aduce además que en enero de 1988, Guerrero llevó a Laurita al Miami South Beach Health Center para operarla innecesariamente sin decirle nada a él, explicó que se enteró de ello a través de la factura del plan Triple S que él paga para su hija. Siguiendo por la misma línea, Maldonado sostuvo que en agosto de 1997, Guerrero presentó un caso de daños y peijuicios contra Perfecto Trabal y el Departamento de Educación en su nombre y a nombre de Laurita. Expuso que se enteró de ello porque la joven lo comentó por lo que comenzó a investigar hasta que supo de lo que se trataba. También explicó que Laurita tiene una condición de anemia por la cual tiene que ser inyectada y que él no ha sido informado de ello.
La Leda. Vivian Acosta Ruiz, Procuradora de Familia en Bayamón desde el año 1997, declaró en la vista del 6 de marzo de 2001 de su interacción con Guerrero desde que estudiaron derecho juntas y, por ende, de la vida de Laurita junto a su madre. Adujo que Guerrero tiene muy buena relación con su comunidad y vecinos y que el lazo entre ésta y Laurita es bien estrecho y afectivo.
El Sr. Femando Zalacain García, economista de profesión y vecino de Maldonado, declaró que éste es una persona muy estimada dentro de la comunidad y que su relación con los vecinos es muy cordial y amena.
El Dr. Jorge Robles Irizarry, psiquiatra, realizó evaluaciones de Maldonado y Guerrero y preparó los respectivos informes. Respecto a Maldonado, adujo que no encontró que tuviese enfermedades mentales ni trastornos de personalidad. Su estado físico y psico-social también resultaron favorables. En cuanto al Funcionamiento Actual Global (“GAP”), mencionó que el resultado arrojado demuestra lo siguiente:
“Pues, una persona que funciona bien, que no tiene impedimentos, que se desenvuelve bien, que puede trabajar, que puede desenvolverse en todas sus áreas completamente”.
Respecto a Guerrero, sostuvo que tampoco presenta tener enfermedades mentales ni trastornos de personalidad. En lo que respecta al estado físico de Guerrero, mencionó que tiene un tumor en la vejiga y que a pesar de que ésta tuvo en el pasado un problema de trastorno de ajuste con ánimo deprimido, para el momento de la evaluación se encontraba estable.
Hacemos esta extensa evaluación de la prueba pericial en apoyo a nuestra conclusión que dicha prueba pericial fue adecuadamente evaluada por el TPI.
III
El tutor es la persona que, bajo la vigilancia y fiscalización de la autoridad judicial, suple la capacidad de obrar y cuida de la persona y bienes del menor o incapacitado. Su función esencial es de dirección, administración y ejecución. Esta se manifiesta en derechos y facultades, deberes y obligaciones de diversa naturaleza.
Entre los deberes del tutor se encuentran: (1) alimentar y educar al menor o incapacitado, con arreglo a su condición y con estricta sujeción a las disposiciones de sus padres o a las que, en defecto de éstos, hubiere adoptado el Tribunal; (2) procurar que éste adquiera o recobre su capacidad; (3) hacer inventario sobre todos los bienes muebles e inmuebles sobre los que se extienda la tutela dentro del término señalado por la sala competente; (4) solicitar oportunamente autorización judicial para todo lo que exige este título. Código Civil de Puerto Rico, Art. 209, 31 L.P.R.A see. 783.
De esto se desprende que el tutor administrará de los intereses del menor o incapacitado como un buen padre de familia y será responsable por todos los daños que resulten de su incumplimiento con sus deberes. Código Civil de Puerto Rico, Art. 209-A, 31 L.P.R.A sección 783a.
En un análisis de los articulados de procedencia española de los cuales provienen nuestros estatutos que *7 gobiernan la tutela, resultan dos (2) características primordiales de la referida institución. En primer lugar, que dicha institución es supletoria de la patria potestad y no subsiste con ésta. En segundo lugar, que la tutela se ejerce, o sobre la persona y bienes del tutelado, o sobre los bienes exclusivamente. José Castán Tobeñas, Derecho Civil Español Común y Foral, lOma ed., Madrid, Ed. Reus S.A., 1995, Tomo V, Vol. 2, págs. 494-500.
El Art. 172 del Código Civil, 31 L.P.R.A. see. 666, establece de forma taxativa, que la tutela ha de ser deferida de una de las siguientes formas: (1) por testamento, (2) por la ley, (3) por tribunal competente. Como puede observarse, esta institución ha sido estrictamente regulada, a los efectos de que los padres podrán designar a un tutor por medio de testamentos o documento público notarial. Por otro lado, el tribunal tiene la potestad de designar tutor, ya sea conforme al orden establecido de preferencia según el Código Civil o tomando en consideración el mejor interés del menor.
Por los importantes intereses envueltos, nuestro Código ha dispuesto una serie de formalidades a los fines que el tutor pueda ejercer las funciones para las cuales ha sido llamado. El requisito sine qua non es la inscripción en el registro de tutelas: “El tutor no entrará en el desempeño de sus funciones sin que su nombramiento haya sido inscrito en el registro de tutelas”. Código Civil de Puerto Rico, Art. 173, supra.
De acuerdo a lo dispuesto en el Art. 237 del Código Civil, 31 L.P.R.A. 741, Guerrero está capacitada para ser tutora de Laurita, es decir, ésta no cumple con ninguna de las limitaciones que constan allí para denegar tutela.
De lo que se desprende de la transcripción de la prueba sometida ante nuestra consideración y de las disposiciones antes señaladas, ambos padres están en igual posición de ejercer la tutela de Laurita. Estamos de acuerdo con lo determinado por el TPI en la sentencia dictada el 30 de junio de 2003:

“La prueba pericial y todo estudio ordenado por el Tribunal, reveló que ambos padres están capacitados para fungir en el rol de tutor o tutora de la joven incapacitada”.

El TPI no demostró haber sido arbitrario en su determinación ni en la evaluación de la prueba tanto documental como pericial que tuvo ante su consideración. Habiéndola analizado detallada y profundamente, concluimos que lo resuelto por el TPI es la decisión más acertada y razonable. Por todo lo anterior, no se cometió el primer error señalado.
IV
El segundo error señalado por Maldonado es que incidió el tribunal de instancia al no permitir prueba de impugnación en el caso de autos. Alega Maldonado que incidió el TPI al no permitirle presentar prueba de refutación del testimonio de Guerrero. Específicamente aduce que solicitó la siguiente prueba de refutación: el testimonio del Dr. José Márquez, hematólogo, que declararía sobre la condición de anemia de Laurita y sobre el tratamiento que ésta necesitaba; del Dr. Casellas quien declararía sobre la necesidad de tratamiento médico ginecológico de Laurita; del Dr. Félix Rodríguez quien declararía sobre la condición de columna desviada de Laurita y de la Dra. Hilda Malavé, terapista del habla, quien declararía sobre las necesidades especiales de la joven.
La Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV, dispone que evidencia que es pertinente puede ser excluida, si resulta de poco valor probatorio en relación a cualesquiera de los siguientes factores: 1) peligro de causar peijuicio indebido; 2) probabilidad de confusión; 3) desorientación del jurado; 4) dilación de los procedimientos; ó 5) innecesaria presentación de prueba acumulativa. 32 L.P.R.A. Ap. IV; Pueblo v. Rivera Nazario, 141 D.P.R. 865, 893 (1996).
*8 Según el inciso (a) de la Regla 19 de Evidencia, supra, se puede excluir evidencia pertinente cuando su valor probatorio tiene poco significado con relación al peligro de causar perjuicio indebido. Si bien es cierto que una parte ofrece evidencia con intención de perjudicar o causar perjuicio al oponente, es igualmente cierto que el tribunal debe excluir aquella evidencia con gran potencial de apelar a las emociones o pasiones del juzgador o al jurado.
En esencia, el perjuicio indebido lo causa toda aquella evidencia que puede llevar a un resultado erróneo, pues ésta simplemente apela a los sentimientos y emociones. Debido a ello, para determinar si la evidencia que se propone presentar debe ser excluida por ser perjudicial, el tribunal tiene que considerar la necesidad de la misma para el proponente y si cuenta con otro tipo de evidencia sin el potencial de perjuicio indebido para establecer lo que intenta probar con la evidencia en cuestión. Lógicamente, si el proponente puede probar lo mismo con otra evidencia claramente admisible, el balance puede inclinarse hacia su exclusión.
Por otro lado, bajo el inciso (e) de esta misma regla, un tribunal tiene la discreción para excluir evidencia pertinente cuando su valor probatorio es de poco peso con relación a la presentación innecesaria de prueba acumulativa. Es decir, una parte no tiene el derecho absoluto de presentar toda la evidencia que tenga del mismo carácter tendiente al mismo fin. Así pues, se le ha reconocido al tribunal la facultad y discreción para poder excluir aquella evidencia que, aunque claramente pertinente, es acumulativa. Véase Pueblo v. Adorno Cabrera, 133 D.P.R. 839, 857 (1993).
Como podemos ver, este es un asunto que se encuentra dentro de la zona de la sana discreción del tribunal. Finalmente, los tribunales tienen amplia discreción al evaluar los factores enumerados por la Regla 19 en yuxtaposición al valor probatorio de la evidencia para determinar si se excluye la misma. Por tanto, se le concede gran deferencia a los tribunales de instancia, por lo que no se intervendrá con estas determinaciones, salvo en casos de abuso de discreción.
En este caso en particular, en su sana discreción, el TPI escuchó la prueba que consideró pertinente para determinar las dos cuestiones en controversia: la incapacidad de Laurita y el nombramiento de tutor. De la prueba desfilada, que pudimos examinar detalladamente, surge que ambos asuntos fueron ampliamente discutidos y analizados. La prueba de impugnación que Maldonado se proponía presentar no sólo era acumulativa respecto a las condiciones de salud y necesidades especiales de Laurita, sino que era innecesaria por no ir al seno de la controversia: la incapacidad de la joven que fue determinada por el TPI, y la capacidad de la madre para ser tutora.
En este caso, el TPI, en su amplia discreción, decidió no admitir la referida prueba de impugnación; la mencionada exclusión no aparenta constituir un error perjudicial. Por los fundamentos antes expuestos, no se cometió el segundo señalamiento de error.
V
El tercer error señalado por Maldonado es que incidió el TPI al recibir una comunicación ex parte y no permitirle acceso a dicha prueba. Aduce que Guerrero envió una carta al Juez Administrador del Centro Judicial, Juez Heriberto Sepulveda y al Juez Orama Monroig, Juez que presidió los procesos. Indica que el Hon. Orama Monroig citó a todas las partes para que en su despacho dicha comunicación fuera leída e informó que ello en nada afectaría su decisión. Aduce que solicitó vehementemente vía moción copia de la carta de la apelada por dos fundamentos distintos: (1) demostrar el mismo patrón de conducta que exhibió Guerrero cuando fue privada de custodia por la Hon. María Pérez Chaar y, por ende, que no estaba rehabilitada para ejercer la tutela y/o custodia; (2) la propia carta demostraba que el estado mentid de Guerrero la hacían incapaz para ejercer un cargo como el de la tutela.
La Regla 5 de Evidencia, supra, regula lo referente al efecto de un error en la exclusión de evidencia. *9 Dispone lo siguiente:

“No se dejará sin efecto una determinación de exclusión de evidencia ni se revocará sentencia o decisión alguna por motivo de exclusión errónea de evidencia a menos que:

(1) La evidencia fue erróneamente excluida a pesar de que la naturaleza, propósito y pertinencia de la misma fue traída a la atención del tribunal mediante una oferta de prueba o por cualquier otro modo, y

(2) el tribunal que considera el efecto de la exclusión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita”.

La doctrina establecida por dicha regla se conoce como la "doctrina del error perjudicial". El criterio, pues, para determinar si un error, al excluir evidencia pertinente, conlleva la revocación, es concluir que de haberse admitido la evidencia, probablemente el resultado hubiese sido distinto.
El Juez Orama Momiog reunió a las partes en su despacho para leerle la referida comunicación ex parte y adujo que ésta no formaría parte de su decisión. No incluyó la referida comunicación como parte del expediente, pero las partes tuvieron conocimiento de su naturaleza y contenido. No existe razón alguna para creer que el Juez Orama Monroig fue influenciado de una forma u otra por la mencionada comunicación, ni que la misma pudiese probar un estado mental que provocaría causa suficiente para renovar a la madre como tutora. Ante tal situación, no existe violación alguna al debido proceso de ley al que tiene derecho todo ciudadano.
No se debe revocar una sentencia basado en la exclusión de evidencia a menos que el tribunal apelativo estime que dicha exclusión tuvo un efecto decisivo en la determinación cuya revocación se solicita. En el caso de autos, no se nos ha mostrado que el contenido de la referida comunicación hubiese variado el resultado a que llegó el TPI. Por el contrario, lo dicho por el Juez Orama Monroig claramente descartó el valor probatorio, si alguno, de dicha comunicación. No se cometió el tercer error señalado.
Por las consideraciones antes expuestas, se confirma la sentencia emitida por el TPI.
El Juez Rodríguez Muñiz concurre con el resultado sin opinión escrita.
Lo acordó y manda este Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez Secretaria del Tribunal de Apelaciones