Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ÁNGEL MARÍA VÁZQUEZ VEGA, ET AL<br><br>*Apelado*<br><br><br>v.<br><br><br>EFRAÍN VÁZQUEZ VEGA<br><br>*Apelante* | TA2025AP00415 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Yauco en Sabana Grande<br><br>Caso Núm.: YU2022CV00055 (803)<br><br>Sobre: Acción de Deslinde y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

Comparece ante nos el señor Efraín Vázquez Vega (apelante o señor Efraín Vázquez), y nos solicita la revisión y revocación de la *Sentencia*[1] dictada el 11 de julio de 2025, notificada el 14 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Yauco (TPI o foro apelado), en la cual declaró HA LUGAR la demanda, disponiendo que las partes procedieran a los correspondientes trámites para la mensura, segregación y amojonamiento de un terreno.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* apelada.

**I.**

La controversia ante nuestra consideración se originó el 12 de febrero de 2022, cuando los señores Ángel María Vázquez Vega y Kermit Vázquez (señor Ángel Vázquez, señor Kermit Vázquez, en

---

[1] Entrada núm. 65 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

conjunto apelados) instaron la *Demanda*[2] en la que alegaron que ambos tienen vínculos sanguíneos con el aquí apelante (hermano y sobrino respectivamente). Aducen que, en el 1981, el señor Ángel Vázquez, en común acuerdo con el apelante, decidieron comprar un terreno perteneciente a su abuela materna. Que el precio fijado fue de once mil dólares, ($11,000.00), que ambos decidieron comprar en conjunto el bien inmueble así que cada uno aportó la cantidad de cinco mil quinientos dólares ($5,500.00). El señor Ángel Vázquez esbozó que le envió su aportación al apelante, también alegó que no realizaron segregación del terreno, más acordaron que el lado derecho del terreno correspondería al apelante y el lado izquierdo del terreno al señor Ángel Vázquez y su esposa. Además, alegaron que para el 1984, se comenzó la construcción de la propiedad en el lado del terreno que habían determinado y, allá para el 1985, decidió regresar a la isla, para mudarse con su familia a la propiedad construida en el terreno izquierdo, como le correspondía, según el acuerdo. Posteriormente, el apelante construyó en el lado derecho del bien inmueble. El señor Ángel Vázquez le solicitó al TPI dividir la comunidad de bienes que posee con el apelante sobre el terreno ubicado en el Barrio Almacigo Bajo, Sector Hernández, del Término Municipal de Yauco, además, realizar la mensura, segregar, deslindar, realizar el amojonamiento de terreno para inscribir de forma individual, y se le requiriera al señor Efraín Vázquez entregar copia de la escritura de compraventa y/o proveer los datos del notario.

De otra parte, el apelante presentó su *Contestación a Demanda*[3] en la que aceptó y negó las alegaciones esbozadas en la *Demanda,* y a su vez, presentó como defensas que el señor Ángel Vázquez actuó de mala fe y que hubo un acuerdo de transacción.

---

[2] Entrada núm. 1 de SUMAC.
[3] Entrada núm. 7 de SUMAC.

Además, se reservó añadir defensas afirmativas conforme a lo que pudiese surgir durante el descubrimiento de prueba.

El 29 de marzo de 2022, el apelante presentó *Moción Solicitando Desestimación por Falta de Legitimación Activa*[4] y alegó que el señor Kermit Vázquez no tiene legitimación activa. Sustentó su petitorio en que *ni en la demanda, ni de sus anejos, surge alegación alguna del Sr. Kermit Vázquez, más bien solo un párrafo la cual se limita a dar su nombre y sus datos.* El 31 de marzo de 2022, el foro apelado emitió *Resolución*[5] y declaró *No Ha Lugar* la *Moción Solicitando Desestimación por Falta de Legitimación Activa* y concedió 120 días para completar el descubrimiento de prueba, ordenó a las partes a coordinar con un agrimensor o ingeniero para realizar la correspondiente mensura por acuerdo de las partes, de no haber acuerdo, los ingenieros contratados deberán mensurar en un solo plano que será vinculante entre las partes. Dispuso, además, que la parte que obstaculice la mensura se le impondrá una sanción de mil dólares ($1,000.00).

Continuaron los procedimientos en el TPI, los cuales no son necesario pormenorizar por no ser pertinentes a la controversia ante nos. Así las cosas, los días 4 y 7 de octubre de 2024, se celebró vista en su fondo. El foro recurrido emitió *Sentencia*[6] y realizó las siguientes determinaciones de hechos estipulados por las partes en el *Informe sobre Conferencia con Antelación al Juicio*[7]:

1. En el 1981, el codemandante, Ángel Vázquez, se encontraba residiendo en los Estados Unidos, con su entonces esposa, Luz Aida Madera Vélez. Se enteró que su abuela materna estaba vendiendo un terreno que colindaba con la casa de su mamá.

2. En el 1985, el Sr. Ángel Vázquez, regresó a la Isla, terminó los últimos detalles de la propiedad que construyó en el terreno en controversia y se mudó con su familia a la misma.

3. Que ambas partes desean dividir la propiedad.

---

[4] Entrada núm. 8 del SUMAC.
[5] Entrada núm. 9 de SUMAC.
[6] Entrada núm. 65 de SUMAC.
[7] Entrada núm. 39 de SUMAC.

4. Que la propiedad construida por Don Ángel y su exesposa dentro del terreno, fue con dinero de esa Sociedad Legal de Bienes Gananciales y que el demandado no hizo aportación monetaria, ni pago alguno en la construcción de la misma.

5. Que la estructura a la izquierda del terreno pertenece, exclusivamente, al Sr. Ángel Vázquez Vega.

6. Que el demandado no se opuso a la construcción de la casa del hermano y que presenció la construcción de la misma, porque vivía en la casa de su mamá, justo al lado del terreno.

7. [La] propiedad no consta inscrita en el Registro de la Propiedad.

Por otro lado, el TPI realizó las siguientes determinaciones de hechos admitidos y establecidos por la prueba:

8. El Sr. Ángel María Vázquez Vega y la testigo, Luz Aida Madera Vélez, se divorciaron el 14 de septiembre de 1998.

9. Como parte del acuerdo de divorcio, Don Ángel pagó a su exesposa, Luz Aida Madera Vélez, la suma de $30,000.00, por su participación en el predio de terreno objeto de esta controversia y la vivienda construida por éstos.

10. El Sr. Ángel María Vázquez Vega y la señora Madera Vélez se encontraban legalmente casados para cuando se adquirió el terreno, en el año 1981.

11. Don Ángel atestiguó y otros testigos así lo corroboran que este envió por correo a la dirección de su mamá, Doña Ana Vega, la mitad del dinero por haber aceptado comprar el terreno con su hermano, Efraín Vázquez Vega.

12. El terreno fue adquirido por valor sentimental y la parte izquierda que interesaba Ángel Vázquez Vega, para construir allí y regresar a Puerto Rico para vivirlo con su familia.

13. La parte demandante obtuvo la autorización por parte del demandado y de la madre de ambos, para gestionar en el año 1985, los servicios de luz y agua, para lo cual le facilitaron los documentos pertinentes.

14. El demandado, Efraín Vázquez Vega[,] es hermano del codemandante, Ángel María Vázquez Vega, y tío del codemandante, Kermit Vázquez Vega.

15. Para el año 1981, Ángel Vázquez Vega y su entonces esposa, Luz Aida Madera Vélez, residían en los Estados Unidos. Hubo conversaciones entre los hermanos Ángel y Efraín Vázquez Vega y su madre, Ana Vega, sobre la venta de un terreno propiedad de su abuela materna y otros miembros de la Sucesión de su abuelo.

16. La prueba sostiene que ambos hermanos, Ángel y Efraín, acordaron comprar el terreno, adquiriendo cada uno una participación del cincuenta por ciento (50%).

17. El 11 de julio de 1981, el codemandado, Efraín Vázquez Vega[,] compareció a la Escritura Número 21, sobre Cesión de Derechos Hereditarios, otorgada por Doña Alejandrina López Vélez, viuda de Don Antonio Vega López y otros coherederos de este último. Dicha Escritura se otorgó en la

Ciudad de Ponce, ante el Notario Público Enio Gaud Caraballo.

18. En la Escritura, los comparecientes de la segunda parte hicieron constar su anuencia para ceder el predio de terreno allí descrito, al aquí demandado, Efraín Vázquez Vega, por la cantidad de $11,500.00. Se menciona que, en la Escritura Número 20, las mismas partes otorgaron segregación y cesión del solar de Doña Ana Mercedes Vega López, en pago a su participación hereditaria en la herencia de sus padres.

19. Posteriormente[,] para el año 1984, la testigo Luz Aida Madera Vélez, regresó a Puerto Rico para realizar gestiones relacionadas a la construcción en el terreno y permaneció viviendo acá con sus hijos.

20. En el 1985, Ángel María Vázquez Vega, regresó a Puerto Rico, concluyó la construcción de su residencia y se mudó a ella con su familia.

21. Años más tarde, el demandado, Efraín Vázquez Vega, construyó su propiedad, en el lado derecho del terreno.

22. Ambas partes residieron en propiedades independientes, como vecinos.

23. Respecto al referido terreno, la prueba corrobora que el terreno que más adelante se describe fue adquirido por ambos hermanos, por lo que existe una comunidad de bienes entre los hermanos, Ángel María Vázquez Vega y Efraín Vázquez Vega, ya que dicha propiedad fue adquirida mediante un acuerdo verbal válido con un pacto de participación igualitaria en un cincuenta por ciento (50%) para cada uno de los hermanos.

24. Ambas partes construyeron residencias independientes en el terreno y fue ocupado pacíficamente, bajo el pacto verbal para su adquisición, hasta que surgió la negativa del demandado para reconocer la cotitularidad de su hermano Ángel en dicho bien para gestionar la debida segregación y documentos que justifiquen el dominio por la parte demandante.

25. El interés del codemandante, Ángel María Vázquez Vega, es dividir la comunidad existente en dicho inmueble formalmente y que se le reconozca en ley la titularidad.

26. El inmueble descrito en la Escritura Número 21, es el remanente de una finca de mayor cabida, que Doña Alejandrina y demás herederos, segregaron de la finca principal, la cual se cedió a Doña Ana Mercedes Vega López, madre de Ángel, Efraín y otros hermanos.

27. El remanente era lo que se iba a vender y fue adquirido entre los hermanos, Ángel María Vázquez Vega y Efraín Vázquez Vega, se describe como sigue:

> RÚSTICA: Solar ubicado en el barrio Almácigo Alto de Yauco, Puerto Rico, con una cabida superficial de 7,245.837 metros cuadrados, equivalentes a 1.8411 cuerdas. Linda por el Norte, con terrenos de Santos Vázquez; por el Sur, con predios de Lino Hernández; por el Este, con terrenos de Rosa Estela Rosado; y por el Oeste, con camino vecinal.

28. A pesar de que ambos hermanos, Ángel y Efraín, de apellidos Vázquez Vega, adquirieron el predio de terreno conjuntamente, solamente compareció al otorgamiento de la escritura de cesión hereditaria con pago, el demandado, Efraín Vázquez Vega, como único comprador de dicho bien.

29. El demandado, Efraín Vázquez Vega[,] entregó el dinero de la compra a su abuela, Doña Alejandrina López.

30. El demandado, Efraín Vázquez Vega[,] no gestionó ningún trámite en la propiedad, como inscribirla en el Registro de la Propiedad, formalmente a su nombre o gestiones en el CRIM.

31. Cuando Don Efraín firmó la escritura, acepta que su hermano Ángel se encontraba en Estados Unidos y regresó a construir, sin reparo por parte de este.

32. La testigo que corrobora el envío de dinero para adquirir la mitad del terreno fue Doña Luz Aida Madera Vélez. Los demás hermanos que comparecieron a testificar, por la parte demandante, aunque dijeron que conocían que Ángel María Vázquez Vega había enviado dinero para la compra del terreno, no les consta de propio y personal conocimiento. Aunque conocían del otorgamiento de la escritura, nunca la vieron, ni sabían de su contenido ni que aparecía comprando únicamente el demandado, Efraín Vázquez Vega.

33. La propiedad no consta inscrita en el Registro de la Propiedad.

34. El codemandante, Ángel Vázquez Vega, en unión a su familia, hasta que se divorció y posteriormente su hijo, el codemandante, Kermit Vázquez, han ocupado la parte izquierda del terreno y la estructura allí construida por Ángel y su exesposa, según lo acordado verbalmente con su hermano, Efraín Vázquez Vega, hace más de 30 años, en forma pública, pacífica, ininterrumpida y en concepto de dueños, sin que el demandado, Efraín Vázquez Vega, ni ningún tercero les interpelara u objetara su dominio.

35. El codemandante, Ángel María Vázquez Vega, es un edificante de buena fe.

El foro apelado aquilató la prueba presentada y resolvió que, a base de la evidencia documental y testifical, al apelado le asistía la razón, por lo cual, declaró Ha Lugar la *Demanda y "en consecuencia, procede ordenar a las partes que procedan a los correspondientes trámites para la mensura, segregación y amojonamiento para particularizar los predios de terreno, según corresponde a cada parte para liquidar la comunidad de bienes entre el codemandante, Ángel María Vázquez Vega[,] y el demandado, Efraín Vázquez Vega".* Además destacó que: *"Quedó probado, a satisfacción de este Tribunal, que el Sr. Ángel Vázquez Vega, en*

*efecto, aportó la mitad del dinero para materializar la compraventa del solar; que construyó con sus propios recursos la vivienda localizada en el lado izquierdo del solar; que dicha estructura fue objeto de la liquidación de la Sociedad Legal de Bienes Gananciales que tenía constituida con su exesposa, Sra. Luz Aida Madera Vélez, en el caso JDI98-0648; que la entrada para el acceso al predio ocupado por la parte demandante fue construida por familiares del Sr. Ángel María Vázquez Vega y, por último, la conexión de los servicios de agua y luz fueron solicitados a nombre del codemandante, Ángel María Vázquez Vega y su exesposa, Luz Aida Madera Vélez, desde el año 1985, manteniéndose los servicios vigentes al presente. De igual forma, se determina que el demandado, Efraín Vázquez Vega, no ha sido temerario, ya que había reconocido la copropiedad en sus alegaciones dentro del presente pleito, particularmente en su Contestación a Demanda, donde admitió que ambos hermanos acordaron comprar para que cada uno adquiriera una participación del 50% del inmueble"*[8]. El 29 de julio de 2025, el apelante sometió ante la consideración del TPI una *Moción en Solicitud de Reconsideración*[9], y el 5 de septiembre de 2025, fue declarada No Ha Lugar[10] por el foro apelado, quien expresó: "La parte demandada sostiene que entre las partes nunca medió acuerdo alguno para establecer una comunidad de bienes entre este y el demandante. [...] No obstante, es un hecho inexpugnable que el demandado expresamente aceptó que "ambos hermanos acordaron comprar para que cada uno adquiera una participación del 50% del inmueble. [...] Al haberse aceptado la alegación número 6 de la demanda, esta se convierte en un hecho adjudicado y la parte demandante no tenía que probarlo. [...] En este caso no se relevó de

---

[8] Entrada núm. 65 de SUMAC.
[9] Entrada núm. 71 de SUMAC.
[10] Entrada núm. 81 de SUMAC.

los efectos de la admisión judicial formulada en la contestación a la demanda. Por tanto, ese hecho, por sí solo, establece la existencia de un acuerdo de las partes para adquirir el inmueble, objeto de este pleito, y que a cada uno le correspondiera un 50% de participación. **Aun cuando el hecho es producto de una admisión judicial, el resto de la prueba – de acuerdo con la credibilidad que le mereció a la juzgadora – validó o confirmó lo antes admitido por el demandado**". [Énfasis suplido].

Insatisfecho aún, el 6 de octubre de 2025, el apelante acudió a este foro intermedio mediante recurso de *Apelación* y señalo la comisión de los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia, al determinar que existía una Comunidad de Bienes entre las partes, a pesar de que las partes nunca hablaron, ni se comunicaron para la compraventa del terreno.

> Erró el Honorable Tribunal de Primera Instancia, al concederle a los demandantes titularidad sobre una propiedad inmueble, a pesar de existir una escritura pública valida, Escritura Núm. 21 de 1981 y el plano de mensura aprobado, en la cual los co demandantes, no comparecieron, ni personalmente, ni mediante poder.

> Erró el Honorable Tribunal de Primera Instancia, al declarar con lugar la solicitud de los demandantes respecto a segregación y amojonamiento, en ausencia de los elementos en derecho dispuestos en el Código Civil.

> Erró el Honorable Tribunal de Primera Instancia al determinar que el demandado, el Sr. Efraín Vázquez Vega entregó el dinero de la compra a su abuela, Doña Alejandrina López.

> Erró el Tribunal de Primera Instancia al interpretar que determinadas alegaciones admitidas en la Contestación a Demanda constituían admisiones suficientes para acreditar la existencia de una comunidad de bienes entre las partes.

Esbozó que, durante el juicio, la deposición tomada al señor Ángel Vázquez fue admitida como exhibit A[11] y de ella surge que no se comunicó directamente con su hermano señor Efraín Vázquez, sino a través de su mamá, por lo cual, las partes no se pusieron de

---

[11] Entrada núm. 62 de SUMAC (Minuta).

acuerdo[12], en la escritura de compraventa reconoce que no está su nombre.

El 8 de octubre del corriente, esta Curia emitió *Resolución* para conceder un término de treinta (30) días a los apelados para presentar su posición en torno al recurso presentado. En cumplimiento con dicha *Resolución*, el 22 de octubre de 2025, se presentó el *Alegato Replicando la Apelación*. Finalmente, el 13 de noviembre de 2025, el apelante presentó una *Réplica a Alegato en Oposición*. Cabe señalar que el Reglamento del Tribunal de Apelaciones no contempla la presentación de escritos ulteriores sin autorización por lo que procede dar por no puesta la referida moción.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

Las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas. Son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas. Por ello, las estipulaciones son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil[13]. Las estipulaciones deben interpretarse de forma liberal y compatible con la intención de las partes y el propósito de hacer justicia. Ahora bien, cuando una parte acepta una estipulación, queda obligada por la alegación salvo que el tribunal le permita retirarla[14].

---

[12] Véase Apelación págs. 10–18. Destacamos que la deposición ni la transcripción de la prueba oral no fueron incluidas como anejos del recurso ante nuestra revisión.

[13] *Rivera Menéndez v. Action Services,* 185 DPR 431, 439 (2012); *Mun. de San Juan v. Prof. Research,* 171 DPR 219, 238 (2007); *P.R. Glass Corp. v. Tribunal Superior,* 103 DPR 223, 231 (1975).

[14] *Díaz Ayala et al. v. E.L.A.,* 153 DPR 675, 693 (2001).

De otra parte, las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas[15]. Tienen como finalidad evitar dilaciones, inconvenientes y gastos, por lo que su uso debe alentarse para lograr el propósito de hacer justicia rápida y económica[16].

En nuestra jurisdicción se reconocen tres tipos de estipulaciones:

(1) las que constituyen admisiones de hechos y dispensan del requisito de probarlos[17];

(2) aquellas que reconocen derechos y tienen el alcance de una adjudicación, y

(3) las estipulaciones que plantean determinado curso de acción, como, por ejemplo, la celebración de una conferencia con antelación al juicio; someter un asunto a un comisionado especial; o la admisión de determinadas pruebas[18].

Las estipulaciones de hechos tienen el efecto de dispensar el requisito de probar tales hechos. En otras palabras, cuando se admite o estipula un hecho, la parte está relevada de probarlo[19]. En estas situaciones, la estipulación sustituye la prueba que hubiera sido presentada en la vista del caso[20]. Una vez estipulado un hecho, la parte no puede impugnar el mismo posteriormente[21]. No obstante, las teorías o aseveraciones de las partes no forman parte de este tipo de estipulación[22].

---

[15] *Rivera Menéndez v. Action Service*, 185 DPR 431, 439 (2012); *Díaz Ayala et. als. v. E.L.A.*, 153 DPR 675, 693 (2001); *Ramos Rivera v. E.L.A.*, 148 DPR 118, 126 (1999).

[16] *Ramos Rivera*, 148 DPR, a la pág. 126.

[17] Regla 6.4. Consecuencias de no negar. 32 LPRA Ap. V, R. 6.4: Las aseveraciones contenidas en cualquier alegación que requiera una alegación responsiva y que no se refieran al monto de los daños, se considerarán admitidas si no fueron negadas en la alegación responsiva. [...].

[18] *Rivera Menéndez, supra*, *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 238 (2007); *P.R. Glass Corp. v. Tribunal Superior*, 103 DPR 223, 230 (1975).

[19] *Rivera Menéndez, supra*, *Díaz Ayala et. als.*, 153 DPR, a la pág. 693; *Sepúlveda v. Depto. de Salud*, 145 DPR 560, 571 (1998).

[20] *Rivera Menéndez, supra*, citando a *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 752 (1987); *Vda. de Rivera v. Pueblo Supermarkets*, 102 DPR 134, 139 (1974).

[21] *Rivera Menéndez*, 185 DPR a las págs. 439-440; *Maldonado v. Consejo de Titulares*, 111 DPR 427, 434-435 (1981).

[22] *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 DPR 527, 531 (1981).

La segunda categoría de estipulaciones antes mencionadas son las estipulaciones que tienen el efecto de poner fin a un pleito o a un incidente en este. En este tipo de situación, el Tribunal Supremo ha resuelto que esa estipulación obliga a las partes y tiene el efecto de cosa juzgada[23]. Asimismo, esta clase de estipulación podría categorizarse como un contrato de transacción si reúne los requisitos de ese tipo de contrato[24].

Por su parte, "la tercera clase de estipulación es la que trata sobre materias procesales"[25]. En esta clase de estipulación, las partes acuerdan la forma y manera en la que se llevará a cabo determinado trámite procesal. En este tercer tipo de estipulaciones (las procesales), se puede incluir la autenticación de evidencia. Lo anterior es cónsono, no solo con la normativa general que promueve el uso de las estipulaciones como herramientas de simplificación procesal, sino con las Reglas de Procedimiento Civil[26].

**-B-**

Es norma reiterada que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de primera instancia[27]. Esta deferencia hacia el foro primario responde al hecho de que el juez sentenciador es el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, de escuchar la declaración de los testigos y evaluar su *demeanor* y confiabilidad[28]. Ahora bien, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas

---

[23] *Rivera Menéndez*, 185 DPR a la pág. 440. (Notas al calce omitidas).
[24] *Íd.*
[25] *Íd.*
[26] *Rivera Menéndez*, 185 DPR a la pág. 441.
[27] *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).
[28] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009); *López v. Dr. Cañizares*, 163 DPR 119, 135 (2004).

por la prueba desfilada ante el foro primario. Se exceptúan de la regla de deferencia, las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba[29]. La apreciación de la prueba realizada por el TPI debe ser objeto de deferencia por los tribunales apelativos[30]. Como Regla general, no se intervendrá con la apreciación de la prueba, las determinaciones de hechos y las adjudicaciones de credibilidad que haga el foro de instancia[31].

En consideración a lo anterior, los tribunales apelativos deben brindarle gran deferencia al juzgador de los hechos, pues éste se encuentra en mejor posición para evaluar la credibilidad de un testigo y los conflictos de prueba deben ser resueltos por el foro primario[32].

No obstante, aunque el arbitrio del juzgador de los hechos es respetable y merece deferencia, no es absoluto y una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Méndez de Rodríguez v. Morales Medina*, 142 DPR 26 (1996). Si un análisis integral de la prueba refleja que las conclusiones del tribunal *a quo* están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, éste ha cometido un error manifiesto[33]. Por lo tanto, en vista de dicha función revisora este Tribunal -por vía de excepción- puede intervenir con la apreciación de la prueba que ha

---

[29] *González Hernández v. González Hernández,* 181 DPR 746, 776-777 (2011).
[30] *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894 (2011); *McConnell v. Palau,* 161 DPR 734 (2004).
[31] *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31 (2009); *Trinidad García v. Chade,* 153 DPR 280 (2001).
[32] *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345 (2009); *Ramírez Ferrer v. Conagra Foods P.R.,* 175 DPR 799 (2009).
[33] *Íd.* Véase también, *S.L.G. Rivera Carrasquillo v. A.A.A., supra*; *Ramírez Ferrer v. Conagra Foods P.R., supra.*

hecho el foro de instancia cuando existe error manifiesto, prejuicio, parcialidad o pasión por parte del juzgador de los hechos[34].

De otro lado, es principio establecido que un tribunal apelativo está en la misma posición que el TPI en cuanto a la apreciación de prueba documental o pericial[35]. Por tanto, corresponde a la parte que impugna el peso de probar que el dictamen fue arbitrario, irrazonable o que se tomó en ausencia de evidencia sustancial, todo lo cual implicaría error manifiesto[36]. Es por ello por lo que en casos donde existe conflicto entre las pruebas, corresponde precisamente al tribunal de instancia dirimirlo[37].

En consecuencia, la intervención de un foro apelativo con la evaluación de la prueba testifical únicamente procede en casos en que un análisis integral de dicha prueba pueda causar en el ánimo del foro apelativo una insatisfacción o intranquilidad de conciencia tal que estremezca el sentido básico de justicia[38]. Los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que "del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida"[39].

### -C-

En nuestro ordenamiento jurídico coexiste la figura de la comunidad de bienes. La comunidad de bienes existe cuando una la propiedad de una cosa o de un derecho pertenece proindiviso a

---

[34] *Rolón García v. Charlie Car Rental, Inc.*, 148 DPR 420 (1999); *López Vicil v. I.T.T. Intermedia, Inc.,* 142 DPR 857 (1997); *Pueblo v. Collado Justiniano,* 140 DPR 107 (1996).
[35] *Castrillo v. Maldonado*, 95 DPR 885 (1968).
[36] *Gallardo v. Petiton,* 132 DPR 39 (1992); *Henríquez v. C.E.S.,* 120 DPR 194 (1987)*; Rivera Pérez v. Cruz Corchado,* 119 DPR 8 (1987); *Quintana Tirado v. Longoria,* 112 DPR 276 (1982).
[37] *López Vicil v. ITT Intermedia, Inc., supra.*
[38] *Pueblo v. Cabán Torre*s, 117 DPR 645 (1986).
[39] *Maryland Casualty Co. v. Quick Const. Corp.,* 90 DPR 329, 336 (1964).

varias personas. A falta de contratos o disposiciones especiales, la comunidad se regirá por las Secciones 1271 a 1285 del Código Civil[40].

Es norma firmemente asentada que **ningún condueño está obligado a permanecer en la comunidad**[41]. Por ello, la división de la cosa común pueda tener lugar en cualquier momento, a petición de cualquiera de los comuneros. La división de la comunidad de bienes establece que "serán aplicables a la división entre los partícipes en la comunidad, las reglas concernientes a la división de la herencia. En otras palabras, de acreditarse la existencia de la comunidad, procede adjudicar la porción de cada partícipe en los bienes"[42].

### III.

El apelante argumenta en su escrito que, el foro apelado cometió cinco (5) errores, en síntesis, al declarar la comunidad de bienes entre las partes, concederle a los apelados titularidad sobre una propiedad inmueble, a pesar de existir una escritura pública valida, Escritura Núm. 21 de 1981, declarar con lugar la segregación y amojonamiento en ausencia de los elementos en derecho dispuestos en el Código Civil, al determinar que, el señor Efraín Vázquez Vega entregó el dinero de la compra a su abuela, Doña Alejandrina López y por último, interpretar que determinadas alegaciones admitidas en la *Contestación a Demanda* constituían admisiones suficientes para acreditar la existencia de una comunidad de bienes entre las partes. Adelantamos que el TPI no incidió. Veamos.

Luego de celebrado el juicio, el TPI determina como un hecho probado que el señor Ángel Vázquez aportó la mitad del dinero para

---

[40] Destacamos que el Código Civil de Puerto Rico 1930 (derogado), 31 LPRA secc. 1271, *et. seq.*, aplica a los hechos de este caso.
[41] 31 LPRA secc.1279.
[42] 31 LPRA secc.1285.

materializar la compraventa del solar; que construyó con sus propios recursos la vivienda localizada en el lado izquierdo del solar; que dicha estructura fue objeto de la liquidación de la Sociedad Legal de Bienes Gananciales que tenía constituida con su exesposa, Sra. Luz Aida Madera Vélez, en el caso JDI98-0648; que la entrada para el acceso al predio ocupado fue construida por familiares del señor Ángel Vázquez  y, por último, la conexión de los servicios de agua y luz fueron solicitados a nombre del apelado, Ángel Vázquez y su exesposa, Luz Aida Madera Vélez, desde el año 1985, manteniéndose los servicios vigentes al presente. De igual forma, se determina que el apelante, no ha sido temerario, ya que había reconocido la copropiedad en sus alegaciones dentro del presente pleito, particularmente en su *Contestación a Demanda,* donde admitió que ambos hermanos acordaron comprar para que cada uno adquiriera una participación del 50% del inmueble.

En su recurso de *Apelación,* el apelante sustenta su recurso a base de fragmentos de la toma de deposición del señor Ángel Vázquez tomada durante el descubrimiento de prueba.

Tras evaluar la totalidad del expediente, no encontramos motivo alguno para interferir con la apreciación de la prueba realizada por el TPI[43]. Las determinaciones de hechos encuentran apoyo en la prueba documental y en los testimonios que fueron vertidos en el juicio y a los que el foro apelado le concedió credibilidad. En este caso, la prueba presentada y creída por el TPI demostró *el historial de ocupación y construcción de las viviendas por ambas partes, sustentan la existencia de un pacto de comunidad de bienes*[44], así pues, concedió los remedios solicitados en la *Demanda.*

---

[43] Ante una controversia sobre la apreciación de la prueba testifical desfilada en el juicio, procedía la presentación de una transcripción de la prueba oral. Al no realizarse, procede aplicar las Reglas 19 y 76 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 37 y 103, 215 DPR ____ (2025).

[44] Entrada núm. 65 de SUMAC.

Por lo cual, determinamos que el TPI no abusó de su discreción en su determinación, pues no incurrió en pasión, perjuicio, parcialidad o error manifiesto. En virtud de lo antes expuesto, le otorgamos deferencia al TPI con relación a la determinación de hechos y apreciación de la prueba testifical, y resolvemos que no incidió en el error señalado por el apelante. Por ello, procede que confirmemos la *Sentencia* apelada.

**IV.**

Por los fundamentos que anteceden, se ***confirma*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones